**In the Matter of BALDWIN–UNITED CORPORATION, D.H. Baldwin Company, et al., Debtors.**

**No. 1–83–02495.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 7, 1985.

Mark D. Plevin, O'Melveny & Myers, Washington, D.C., for petitioner.

Gene Mesh, Cincinnati, Ohio, David B. Gold, San Francisco, Cal., for respondents.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

These Chapter 11 cases are before the Court pursuant to the Debtors' objections to claims number 7094, 7142, 8013, 7178, 7350, 7351, 7352, 7353, 7354, 7355, 7356 and 7357, all of which purport to be "class proofs of claim."

The claims involved are of two types: one group of claims was filed on behalf of allegedly defrauded purchasers of various Baldwin-United Corporation ("BU") or D.H. Baldwin Co. ("DHB") securities;[1] the other group was filed on behalf of purchasers of single premium deferred annuities issued by Baldwin's subsidiary insurance companies.[2]

Debtors have objected to these claims on the basis that class proofs of claim are not authorized by either the Bankruptcy Code or the Rules of Bankruptcy Procedure. The Baldwin-United and D.H. Baldwin Unsecured Creditors' Committees and the Common Stockholders' Committee filed responses in support of the Debtors' objections. The claimants and the Securities and Exchange Commission all responded in opposition. Oral argument on the objections and responses was heard May 20, 1985.

The claimants put forth three arguments in their favor: First, they contend that the Bankruptcy Code and Rules permit them, as representatives, to file claims on behalf of others similarly situated. Second, they urge us to apply Federal Rule of Civil Procedure 23 to these claims, and third, they believe that equity dictates a ruling in their favor. For the following reasons we must reject all three arguments.

## I. WHO MAY FILE A PROOF OF CLAIM.

Section 501(a) of the Bankruptcy Code provides that "[a] creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest." Likewise, Bankruptcy Rule 3003(c)(1) states that "[a]ny creditor or in-

---

1. Claim 8013 was filed by Hilda Stoller, Samuel W. Jacobs, Herman Moller, James and Hilda Granger, Glenn C. Daily, Skyview Associates, Gregory Sheffield and Ralph Bedel, Trustee, "individually and as a class claim" on behalf of all purchasers of BU common and preferred stock, BU 10% subordinated debentures due 2009 and DHB debentures due 1994 during the period of December 14, 1981 through March 29, 1983. These purchasers are estimated to number approximately 19,000. The above parties, with the exception of Ralph Bedel, Trustee, are the named plaintiffs in a securities fraud action (the "*Stoller*" litigation) pending before the Honorable David Porter, U.S. District Court, Southern District of Ohio. In an Order dated June 4, 1985, Judge Porter conditionally granted the plaintiffs' motion to certify a class in *Stoller* and conditionally certified as representatives of that class the above-named claimants, with the exception of Bedel. Bedel is plaintiff in a separate District Court action alleging securities fraud in the sale of certain D.H. Baldwin Company debentures. So far as we know, no motion to certify a class has been filed in the *Bedel* lawsuit.

  Claim 7178 was filed by Gregory Sheffield on his own behalf and on behalf of all purchasers of the above-listed debentures during the same period.

  Claims 7350 through 7357 were filed individually by the parties named in claim 8013 on behalf of themselves and the class defined in claim 8013.

2. Claim 7094 was filed by James Smith Rudolph individually and as representative of a class of purchasers of single premium deferred annuities ("SPDAs"). Claim 7142 was filed by Richard and Patricia Boyle, Steven and Rose Domeny, Harry Factor, Alfred Linton, Robert Moore and Willa June Morgan on their own behalf and on behalf of a class of purchasers of SPDAs. Both the Boyle and Rudolph claims purport to represent approximately 160,000 purchasers. The Boyle claim asserts damages of $3.7 billion, while Rudolph claims the amount owing as "in excess of $100 million."

denture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule." A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). An "entity" is then defined as a "person, estate, trust, and governmental unit." 11 U.S.C. § 101(14). "Person" is defined in § 101(33) as including "individual, partnership, and corporation, but does not include governmental unit." Nowhere in the Code is "creditor" defined as a "class" or "representative" of a group or class.

Bankruptcy Rule 3001(b) provides that "a proof of claim shall be executed by the creditor *or the creditor's authorized agent* except as provided in Rules 3004 and 3005." (Emphasis supplied.) (Rules 3004 and 3005 allow, in certain circumstances, the filing of claims on behalf of creditors by the debtor or trustee, a guarantor, surety, indorser or other co-obligor.) A proof of claim, except a claim for wages, salary or commissions, must conform substantially to Official Form No. 19. Bankr.R. 3001(a). Official Form No. 19 has appropriate blanks to be filled in depending on whether the claimant is an individual, partnership, corporation or agent. The portion to be filled in by an agent requires the agent to list the name and address of the claimant on whose behalf he is filing the claim.

■ Both groups of objecting claimants urge that we find them to be "agents" under Rule 3001(b) for purposes of filing a class proof of claim.[3] We decline to do so. None of the claimants, with the exception of the Boyle claimants, has even attempted to comply with Rule 2019(a) which requires that every person purporting to represent more than one creditor in a Chapter 11 reorganization file a verified statement with the clerk stating the names and addresses of those creditors, the nature and amount of their claims, when the claims were acquired, and the pertinent facts and circumstances in connection with the employment of the representative. The Rule 2019 statement filed by the Boyles is deficient in terms of listing the names and addresses of the purported class members, and when those persons acquired their claims.

■ Furthermore, while we recognize that the *Stoller* plaintiffs have been conditionally certified as class representatives in the District Court action, and the Boyle plaintiffs have been certified as class representatives in various multi-district SPDA proceedings pending in the Southern District of New York solely for purposes of approval or disapproval of a settlement,[4] we do not believe that being a class representative is the equivalent of being an authorized agent for purposes of filing a proof of claim. The cornerstone of any agency relationship is its consensual nature. The Restatement on Agency defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). Furthermore, the "agency relation exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Id.* § 15.

There has been no consent here. At the time these claims were filed there had been no class certification in any District, and since that time there has been an opportunity for the claimants purportedly represented here to "opt out" of the classes. Furthermore, the filing claimants did not notify their fellow claimants of their attempt to file a class claim. (*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In addition, consent to being a member of a class in one

---

**3.** Claim 7178, filed by Gregory Sheffield, does not contain any allegation of an agency relationship, either between the claimant and the class or the attorney and the claimant. The other claims at issue do.

**4.** None of the Boyle claimants was certified as representative of *all* SPDA holders; likewise, Rudolph has not been so certified.

piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue:

> Unlike most other entities created by law, ... the class has procedural, rather than substantive, origins. It owes its existence to the perceived need for party consolidation in order to expedite litigation that would otherwise involve burdensome and conflicting individual suits.

> Given this procedural basis, the creation of a class relates solely to a single common litigational event. All actions taken on behalf of the class must relate to that litigation and, upon conclusion thereof, the class ceases to exist.

*In re Ross,* 37 B.R. 656, 658 (Bkrtcy.App. 9th Cir.1984).

## II. APPLICABILITY OF FEDERAL RULE 23 IN BANKRUPTCY CONTEXT

Both the securities fraud claimants and the SPDA claimants argue that Rule 23 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Bankruptcy Rule 7023, authorizes the filing of class proofs of claim.

It has been recognized that class action procedures may be appropriate for dealing with multiple claims that have been properly filed, provided that the requirements of F.R.C.P. 23 can be met by the party seeking class certification. *See, In re REA Express, Inc.* 10 B.R. 812 (Bankr.S.D.N.Y. 1981) ("No additional administrative difficulties would be occasioned by the use of class action in this case. All interested parties have already filed their claims ... on an individual basis. The extent of the class is thus fixed and its members are known." *Id.* at 815); *In re W.T. Grant Co.,* 24 B.R. 421 (Bankr.S.D.N.Y.1982) (Contested matter involving former employee claimants "merits the application of Rule 723," but class lacks numerosity and certification is denied. *Id.* at 424, 426).

■ We have not found, however, any persuasive authority that would allow, under the guise of "class claims," those claims filed on behalf of individuals who failed to file their own claims. The weight of authority, in fact, is to the contrary. In *In re Society of the Divine Savior,* 15 F.R.Serv.2d (Callaghan) 294 (E.D.Wisc. 1971), the Court denied the class certification motion filed on behalf of 1100 similarly situated creditors and held that each creditor had to file a claim in order to share in any distribution. That holding has been followed in *In re Shulman Transport Enterprises, Inc.,* 21 B.R. 548 (Bankr.S.D.N.Y.1982), *aff'd* 33 B.R. 383 (S.D.N.Y.1983), on the basis that class proofs of claim "would circumvent the stringent requirement that every creditor file his proof of claim in order to participate," *id.* at 551, and in *In re Grocerland Cooperative, Inc.,* 32 B.R. 427 (Bankr.N.D.Ill.1983), where the Court found "that only those claimants who file timely proofs of claims should be allowed to participate in any class action." *Id.* at 436.

Because the claimants here are not seeking class certification for a number of individually filed claims, we do not reach the question of whether the requirements of Rule 23 (numerosity, commonality, adequacy of representation) are met.

■ Furthermore, claimants' procedural arguments based on Rule 23 are not persuasive. Bankruptcy Rule 7023 states: "Rule 23 F.R.C.P. applies in adversary proceedings." The filing of a proof of claim, however, does not constitute an adversary proceeding, and thus Rule 7023 can have no applicability on that basis. *See, In re Standard Metals Corp.,* 48 B.R. 778, 783 (D.Colo.1985).

■ The Debtors, by filing objections to the proofs of claim here, created a contested matter (*See,* Bankruptcy Rule 9014).

Bankruptcy Rule 9014 provides that the Court *may,* at any stage in a contested matter, direct that one or more of the Bankruptcy Rules in Part VII (which includes Rule 7023) shall apply. (Emphasis supplied.) We do not believe, and have found no authority for, the proposition that by triggering a contested matter, the Debtors' objections to claims can serve to retro-

actively legitimize an otherwise unauthorized proof of claim.

The Advisory Committee Notes to Rule 914, the predecessor to Rule 9014, indicate that "[l]itigation of a particular suit, although not an adversary proceeding ..., may become sufficiently serious and complicated to warrant the court's direction that the procedure be governed by rules that govern such proceedings."

The SEC urges that we apply Rule 7023 to the resolution of the class claims filed in the case because "securities fraud actions are the epitome of the serious and complicated contested matter referred to by the Advisory Committee." (SEC Memorandum in Response, Doc. 3–12 at 13.) This argument fails to recognize that the instant contested matter is not a complex securities fraud action, nor is it an action based on the marketing and sale of SPDAs; it is instead an objection to proofs of claim on the basis that those claims are not authorized by either the Bankruptcy Code or Rules.

## III. EQUITY DOES NOT DICTATE FINDING THAT CLASS CLAIMS ARE AUTHORIZED.

The claimants here argue that a class proof of claim is the only avenue by which defrauded investors may attempt to recover their losses; that the debtors' bar date notice was inadequate, and that requiring individual creditors to file individual proofs of claim is burdensome, inequitable and disruptive of the orderly progress of the reorganization.

Bankruptcy Rule 3003(c)(2), however, *requires* that any creditor or equity security holder whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated must file a proof of claim or interest within the time prescribed by the Court; "any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

On February 10, 1984, the Debtors filed an application for an order establishing a claims bar date in these cases. The application was set for hearing on March 1, 1984. The notice of that application was mailed to all entities on Master Service List No. 14, including the *Stoller* litigants' counsel. No objections were raised to the proposed bar date order, but the Debtors did make changes in the order to accommodate the concerns of the SEC and the three committees. *See*, Transcript of Proceedings, March 1 and 2, 1984, Court Docs. 537 and 576.

On March 2, 1984, the Court entered its Order fixing the bar date in these cases. The bar date for all creditors except certain affiliates and subsidiaries and state insurance guaranty funds was set at 4 p.m., July 25, 1984. (Doc. 521). That Order specifically required that claims for damages or rescission based on the purchase or sale of the Debtors' publicly-traded securities must be filed in order to participate in any plan of reorganization. On April 15, 1984 a claims bar date notice was sent to all creditors of the Debtors. The Debtors' stock transfer agent sent notice to holders of the Debtors' securities, as evidenced by certificates of service filed with the Court. The bar date notice was also published in The Wall Street Journal, International Herald Tribune, New York Times, Cincinnati Enquirer, Cincinnati Post, Columbus Dispatch and Los Angeles Times.

We find that under all the circumstances the notice given was adequate and sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their [claims]." *In re GAC Corp.*, 681 F.2d 1295, 1300 (11th Cir.1982), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Some 400 creditors filed claims for damages or rescission based on the purchase or sale of the debtors' publicly traded securities. This clearly indicates that the process of filing a proof of claim is not as burdensome or complicated as the claimants assert, and that "class" claims are not the sole avenue of recovery for those who feel

damaged by the purchase or sale of the securities.

While only thirteen SPDA holders filed proofs of claim, this small number may be attributable to the fact that by the time a claims bar date was set in these cases, plans of rehabilitation were already in effect in Arkansas and Indiana for the six insurance companies that sold SPDAs. Thus holders of SPDAs might quite justifiably have believed that they were not creditors of Baldwin-United or D.H. Baldwin Company, and had no reason to file claims against the bankruptcy estates since their interests were being protected by the insurance rehabilitators in those states.

Both the SEC and the *Stoller* claimants urge that we extend the claims bar date and re-notice it to all claimants they purport to represent. To do so would delay, perhaps fatally, the chances for having a plan of reorganization confirmed by the target date of January 15, 1986, would add considerably to the already extraordinary expenses of administering these estates, and would merely duplicate the notice given over a year ago while undoubtedly and needlessly confusing its recipients.

Finally, we must point out that even if we were to find in the *Stoller* claimants' favor on any or all of their arguments, their victory would likely be a hollow one given our recent holding that securities fraud claims must be subordinated pursuant to 11 U.S.C. § 510(b). *Baldwin-United Corp. v. Adams, et al., and Afflebach, et al.,* 52 B.R. 539 (Bankr.S.D. Ohio 1985), *appeal filed,* (S.D. Ohio July 12, 1985).

For the foregoing reasons, we GRANT the Debtors' Objections to Claims Number 7094, 7142, 8013, 7178, 7350, 7351, 7352, 7353, 7354, 7355, 7356 and 7357, insofar as they purport to be filed on behalf of persons who have not filed individual proofs of claim.

IT IS SO ORDERED.